AMBRO, Circuit Judge,
dissenting in part and concurring in the judgment
I concur with the result set by my colleagues, but I take a different path in getting there. I do so because I believe that the statutory language, and our comments on it, are clear that an in forma pauperis action begins under 28 U.S.C. § 1915 when a court grants the IFP request and not when the appeal is filed. Because we have not granted that request of Millhouse, we must determine if he has accrued two more strikes since his appeal. Because he has, he normally would be barred from proceeding with IFP status in this appeal, as he has three strikes that typically forestall filing further claims absent paying full filing fees. However, I believe our precedent in Urrutia v. Harrisburg County Police Department, 91 F.3d 451 (3d Cir. 1996), controls this case and allows us to equitably toll the two strikes that Millhouse has accrued pending our decision as to his IFP request. Thus, while I disagree with my colleagues’ interpretation of the Prisoner Litigation Reform Act (“PLRA”) and their conclusion that Heath II does not count as a strike, I agree that Millhouse only has one strike *165 for the purpose of this appeal and thus his case should be remanded.
DISCUSSION
A. An IFP Action Commences with the Grant of IFP Status
Section 1915(g) provides
In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed qn the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.
(emphases added). Millhouse filed his notice of appeal on May 26, 2015 and his request for IFP status on June 15, 2015. His subsequent strikes accrued after those dates when his complaints were dismissed—October 27, 2015 and February 24, 2016. See Coleman v. Tollefson, — U.S. —, 135 S.Ct. 1759, 191 L.Ed.2d 803 (2015) (strike accrues at dismissal). So when did Millhouse “bring” this appeal under the meaning of the PLRA? Was it May 26, 2015 when he filed it, or has it not yet 'begun because we have not granted him IFP status? This consideration sets up how to apply the three-strikes rule, as those strikes must constitute “prior occasions ... that [were] dismissed.” 28 U.S.C. § 1915(g) (emphasis added). If May 26, 2015 is the beginning date, the two strikes he has accrued since then cannot apply to bar him IFP status, On the other hand, if this appeal has yet to begin because his request for IFP status is pending, then those two strikes trigger the three-strikes rule.
The answer, I believe, lies in § 1915(a), which creates the right to bring an IFP action. It provides that “any court of the United States may authorize the commencement ... of any suit, action, or proceeding, ... or appeal therein, without any prepayment of fees,” brought by an indigent prisoner. The “authorize the commencement” language suggests that an IFP action is not “brought” under the PLRA simply by filing a complaint or appeal. Indeed, we have explained that because
[o]nly the court may authorize the commencement of any suit without prepayment of fees[,] ;.. submitting an - in forma pauperis complaint to the clerk does not' result in commencement of the litigation ... [because] a determination of whether a prisoner has exceeded the allowable number of frivolous or other inadequate in forma pauperis actions will have to be made before the litigation may commence.
Urrutia, 91 F.3d at 458 n.13 (alterations' and quotations omitted). We have also indicated in a separate three-strikes case that the prisoner’s “action was ‘brought’ when his motion to proceed informa pau-peris was granted.” Gibbs v. Ryan, 160 F.3d 160, 162 (3d Cir. 1998); see Oatess v. Sobolevitch, 914 F.2d 428, 429 n.1 (3d Cir. 1990) (“When a complaint is accompanied by a motion to proceed in forma pauperis, rather than by payment of a filing fee, the complaint is not docketed, and it is therefore not filed, until the motion has been -granted.”). The reasoning is that an IFP action cannot possibly commence until a court both is able to make an “indigency determination” and screen the applicant’s filing history for three-strikes status. See Urrutia, 91 F.3d at 458 n.13; see also Roman v. Jeffes, 904 F.2d 192, 194-96 (3d Cir. 1990) (explaining that § 1915 functions as a screening process for IFP applications). If the IFP applicant passes this *166 initial review as § 1915 requires, the request will be granted, the court will “authorize- the commencement” of the suit or appeal, and the action or appeal then will be “brought.” To me the statute is clear as to this process.
My colleagues believe that an IFP action on appeal begins on filing the notice of appeal.- But they hang their hat on ,§ 1915(g), which does not exist in a vacuum. Rather,-§ 1915(a)-is the statute’s subsection that ■ establishes the right- of an indigent prisoner to avail himself in federal court without. paying the requisite filing fee. It details the process of how such a prisoner can claim that right. .28 U.S.C. § 1915(a)(1) and (2) (a prisoner seeking IFP status shall submit “an affidavit that includes a statement of all assets such prisoner possesses -... [and] the nature of the action, defense or appeal and affiant’s belief that the person is entitled to redress,” as well as “a certified copy of the trust fund account statement ... for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal....”). Section 1915(g), on the other hand, merely establishes the three-strikes rule, which is nothing more than a limitation on who can claim that right. There is no mention in the statute, and the majority points to none,, that the three-strikes rule, was intended to eclipse the procedural mandate of § 1915(a).
Subsection 1915(g) serves only to exclude serial filers from IFP-status eligibility, a determination that a court will make and, if favorable -to the petitioner, then “authorize” the “commencement” of the IFP action under § 1915(a) if the applicant is not a three-strikes offender. To hold otherwise makes ■§ 1915(g) toothless: its purpose is to screen ineligible IFP applicants. Yet the majority would have a potentially three-strikes-offending prisoner be ablé to initiate an action before that screening process was complete simply by filing a complaint or a notice of appeal. That is inconsistent with both the purpose of § 1915(g) and Congress’s established process in claiming the right under § 1915(a). Per the PLRA,- an IFP action begins when a court determines that-an indigent prisoner seeking IFP-status is eligible to do so.[1]
B. Millhouse Has Three Strikes
Thus, given that Millhouse’s appeal has yet to commence for IFP purposes because there has been no decision by this Court to grant him IFP status, we next must decide if he has accrued two additional strikes during the pendency of his IFP application. - - ■ ■
The first questionable strike relates to the dismissal without prejudice of Mill-house’s complaint in Heath II. Millhouse claimed there that prison officials had violated his Eighth Amendment rights by housing him with a dangerous cellmate and failing to protect him. Because Mill-house only alleged fear of possible future assault, and because that could not be the basis for relief, the District Court dismissed his complaint without prejudice for failure to state a claim under the PLRA and also dismissed his claims without leave to amend (as amendment would be futile).
Millhouse argues, and the majority holds, that dismissal without prejudice cannot count as a strike under the PLRA. Although most Circuits hold that there is *167 no reason why a dismissal without prejudice should not count as a strike because § 1915 makes no distinction between dismissals with or without prejudice—see, e.g., Paul v. Marberry, 658 F.3d 702, 705 (7th Cir. 2011); Orr v. Clements, 688 F.3d 463, 465 (8th Cir. 2012); O’Neal v. Price, 531 F.3d 1146, 1154 (9th Cir. 2008); Smith v. Veterans Admin., 636 F.3d 1306, 1313 (10th Cir. 2011); see also Patton v. Jefferson Corr. Ctr., 136 F.3d 458, 463-64 (5th Cir. 1998); contra McLean v. United States, 566 F.3d 391 (4th Cir. 2009) (dismissal without prejudice cannot count as a strike)—we need not decide that issue now.
The Heath II dismissal without prejudice was also without leave to amend. If dismissal worthy of strike-status under the PLRA must “prejudice[] [the prisoner from] the filing of,a subsequent complaint with the same allegations,” McLean, 566 F.3d at 396, isn’t dismissal without leave to amend the functional equivalent of dismissal with prejudice? Millhouse has no further recourse. Thus, although any dismissal under § 1915(e)(2)(B) “is not a dismissal on the merits,” here it has “res judicata effect ... for future in forma pauperis petitions.” Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992).[2] Put more simply, the Heath II dismissal effectively barred Millhouse from filing a “subsequent complaint with the same allegations,” and it is a strike even under the majority’s adoption of McLean’s reasoning.
The next questionable strike arises from the dismissal of Millhouse’s complaint in Doe, in which he filed an action against three unnamed Third Circuit judges for stating in an opinion that Millhouse had confessed to committing a crime and/or cooperated with the Government, and this public exposure threatened his safety in prison^ The District Court dismissed with prejudice the complaint for failure to state a claim under the PLRA because the judges were entitled to absolute immunity in the exercise of their official duties. See § 1915(e)(2)(B)(ii). It also determined that Millhouse’s additional claim for injunctive relief (that he not be housed in the particular prison he was placed) failed to state a claim under the PLRA and dismissed that claim with prejudice. It then denied Mill-house leave-to amend his complaint because that was futile.
Millhouse argues that Doe was not “correct,” and that under a liberal pleading standard he should have the opportunity to amend his complaint to include non-immune defendants. - He asserts he would have added the prison officials who allegedly allowed other inmates to access the relevant Third Circuit opinion on the computers in the prison’s law library.
This argument goes nowhere. Although immunity is- typically’ an affirmative defense that should be asserted in an answer, dismissal is nonetheless warranted in the PLRA context if the immunity defense is clear on the face of the complaint. Ball v. Famiglio, 726 F.3d 448, 463 (3d Cir. 2013). Here the District Court determined from the face of the cómplaint that the only named defendants were judicial officers sued in their official capacity who are entitled to absolute immunity. See Stump v. Sparkman, 435 U.S. 349, 355-56, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); Brandon E. ex rel. Listenbee v. Reynolds, 201 F.3d 194, 200 (3d Cir. 2000). And if Millhouse takes umbrage with the District' Court’s decision regarding his leave to amend, the appropriate path is to appeal that decision *168 directly (which he has not done). Doe thus constitutes a strike.
Accordingly, Heath II and Doe, in combination with Bledsoe (which we held to be a strike in' Sage), are three qualifying strikes against Millhouse.
C. Equitable Tolling of Millhouse’s Strikes
Although Millhouse has three strikes against him, it is overly'prejudicial to bar him access to the Court given the particular facts of this appeal, While the action has not yet begun because we have not granted Millhouse’s IFP application, we should consider the date he filed the appeal (or at least the request for IFP status). The decision to grant or deny an IFP request is made at a court’s convenience, and' thus substantial delay might ensue.
That is what happened here. Millhouse filed a notice of appeal and an IFP request in May and June 2015, ■ respectively; the Clerk’s Office took no action on the IFP request until it, stayed the case five months later in November 2015 (pending the resolution of, Sage); and two strikes accrued during the Court’s delay and mandated stay of the proceedings. That is, the latter two strikes only accrued for the purposes of this appeal due to our Court’s delay.
In Urrutia a prisoner filed his IFP request and complaint, no action was taken by the court, and then he sought to amend his complaint to add defendants even though by that time the statute of limitations had run. 91 F.3d 451. We determined that, even though, the limitations period ran out, “[t]his was not [his] fault[: h]e submitted his informa pauperis complaint a full two months before the statute of limitations was due to expire.” Id. at 458. Because of “the delay in making a § 1915(d) determination ... we [held] that, pnce a plaintiff submits an in forma pauperis complaint,” the statute of limitations would be equitably tolled until the court grants the IFP application. Id. at 459. Thus Urrutia' stands for the principle that, for the purposes of IFP actions, the date they commence can be tolled when the applicant would otherwise be prejudiced.
Other .Circuits have taken this approach. See, e.g., Robinson v. Clipse, 602 F.3d 605, 608 (4th Cir. 2010) (in. an IFP case regarding overdue service of process, the Court held that “an in forma pauperis plaintiff should not be penalized for a delay caused by the court’s consideration of his complaint. That delay is solely within the control of the district court.” (quotations omitted)); Donald v. Cook Cnty. Sheriff’s Dep’t, 95 F.3d 548, 557 n.5 (7th Cir. 1996) (same); Johnson v. U.S. Postal Serv., 861 F.2d 1475, 1485 (10th Cir. 1988) (in a non-prisoner IFP case, holding the “delay encountered while the district court determines a plaintiffs financial eligibility under § 1915, or prepares a statement denying plaintiffs in forma pauperis motion, could consume the entire limitations period”).
The same outcome should occur here. Had our Court made a prompt (at least within five months) ruling on Millhouse’s IFP request or become aware more quickly of the substantial overlap between this case and Sage, the question of whether these Idter strikes apply would not be an issue. Accordingly, we should take the Ur-mtia approach, equitably consider the date- of commencement for three-strikes purposes as June 15 (when Millhouse filed his IFP request) due to our Court’s delay, and rule that the strikes in Heath II and Doe do not apply to that request because they did not accrue prior to Millhouse making it.
# # # #
In summary, we should vacate the District Court’s dismissal of Millhouse’s com *169 plaint under § 1915(g). As we determined in Sage, the cases that the Court relied on to trigger the three-strikes rule are not actual strikes (with the exception of one, Bledsoe). Although I believe Millhouse now has three strikes moving forward, for the reasons noted above I concur with the judgment of the majority.

. The Majority also relies on the Federal Rules of Appellate Procedure for its misreading of the PLRA. That reasoning is odd, given that the PLRA (in both § 1915(a) and (g)) does not distinguish between when an- IFP action can be brought in district court or appealed. They are treated the same, and thus to base a holding on such a reading is out of place. Moreover, the statute, not the Federal Rules of Appellate Procedure, controls.

. Denton involved the application of former § 1915(d) of the PLRA, which was amended by Congress and is now currently § 1915(e)(2)(B).